## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

UNITED STATES OF AMERICA

v.                                          Case No.   3:19-cr-167-MMH-MCR

SANJAY LAMA

_____

# O R D E R

**THIS CAUSE** is before the Court on Defendant Lama's (1) Motion for
New Trial and (2) Post-Verdict Judgment of Acquittal (Doc. 170; Motion), filed
on April 6, 2021.   Following a three-day jury trial, on March 26, 2021, the jury
returned a verdict finding Defendant Sanjay Lama guilty as to the sole count of
the Indictment (Doc. 15; Indictment).   See Verdict Form (Doc. 168; Verdict).
Specifically, the jury found Lama guilty of attempted online enticement of an
individual he believed to be twelve years of age or older but less than sixteen
years of age to engage in illegal sexual activity, in violation of 18 U.S.C. §
2422(b).   See id.; see also Indictment.   In the Motion, Lama requests that the
Court vacate the judgment against him and grant him a new trial pursuant to
Rule 33 of the Federal Rules of Criminal Procedure (Rule(s)), and that the Court
set aside the jury's verdict and enter a post-verdict judgment of acquittal
pursuant to Rule 29(c).   See Motion at 1.   The government responded to the
Motion on April 20, 2021.   See United States' Response in Opposition to

Defendant's Motion for New Trial and Post-Verdict Motion for Judgment of Acquittal (Doc. 177; Response).   Accordingly, this matter is ripe for review.

## I.    Standards

### A. New Trial

Rule 33(a) provides that, "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."[1] Although "motions for a new trial are disfavored," see United States v. Williams, 146 F. App'x 425, 434 (11th Cir. 2005), the "interest of justice" standard is broad, and the trial court is vested with substantial discretion in determining whether to grant such a motion, see United States v. Vicaria, 12 F.3d 195, 198 (11th Cir. 1994); United States v. Martinez, 763 F.2d 1297, 1312 (11th Cir. 1985).   Thus, the court considers "whether the verdict must be set aside in the interest of justice."   United States v. Green, 275 F. App'x 898, 899 (11th Cir. 2008) (internal quotation marks and citation omitted); see also Hall, 854 F.2d at 1271 (concluding that the trial "court has very broad discretion in deciding whether there has been a miscarriage of justice"); Vicaria, 12 F.3d at 198; Martinez, 763 F.2d at 1312.

---

[1]    As the Eleventh Circuit recognized, there are two grounds for granting a new trial under Rule 33: "interest of justice" and newly discovered evidence.   See United States v. Hall, 854 F.2d 1269, 1270 (11th Cir. 1988).   In this case, the only ground potentially implicated in Defendant's Motion is the "interest of justice."

When a defendant challenges the weight of the evidence in a motion for new trial, the court "need not view the evidence in the light most favorable to the verdict" and "[i]t may weigh the evidence and consider the credibility of witnesses." Martinez, 763 F.2d at 1312; see also Green, 275 F. App'x at 900. Yet, "'[t]he court may not reweigh the evidence and set aside the verdict simply because it feels some other result would be more reasonable.'" Green, 275 F. App'x at 900 (quoting Martinez, 763 F.2d at 1312-13). Indeed, "[f]or a court to set aside the verdict, '[t]he evidence must preponderate heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand.'" United States v. Brown, 934 F.3d 1278, 1297 (11th Cir. 2019) (quoting Martinez, 763 F.2d at 1313). Motions for a new trial based on the weight of the evidence are to be granted "'sparingly and with caution,' only in 'exceptional cases.'" Green, 275 F. App'x at 900 (quoting Martinez, 763 F.2d at 1313).

## B. Judgment of Acquittal

Rule 29 provides the Court with authority, where appropriate, to enter a judgment of acquittal following a guilty verdict. See Rule 29(c)(2). A motion for judgment of acquittal under Rule 29 "is a direct challenge to the sufficiency of the evidence presented against the defendant." United States v. Aibejeris, 28 F.3d 97, 98 (11th Cir. 1994); see also United States v. Ward, 197 F.3d 1076, 1079 (11th Cir. 1999) ("In considering a motion for the entry of judgment of acquittal under [Rule 29(c)], a district court should apply the same standard

used in reviewing the sufficiency of the evidence to sustain a conviction.").   In ruling on such a motion, "a district court must 'determine whether, viewing all the evidence in the light most favorable to the jury's verdict, a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt.'"   United States v. Grigsby, 111 F.3d 806, 833 (11th Cir. 1997) (quoting United States v. O'Keefe, 825 F.2d 314, 319 (11th Cir. 1987)).

## II.   Discussion

### A. New Trial

In the Motion, Defendant sets forth several arguments in support of his request for a new trial.   See generally Motion.

### i.   Defendant's Belief in the Age of the Persona

Defendant's first challenge focuses on a key element of the offense of conviction - the Defendant's belief regarding the age of the persona with whom he was communicating.   Id. ¶ 1.   Defendant asserts that the Court erred in allowing the government to seek a conviction based on Defendant's belief that the persona was twelve years old or over, but younger than sixteen years old, and contends that the Court improperly instructed the jury as to this element.[2]

---

[2]   In relevant part, Florida Statutes section 800.04(4)(a) provides that a person commits lewd or lascivious battery by "[e]ngaging in sexual activity with a person 12 years of age or older but less than 16 years of age; or . . . [e]ncouraging, forcing, or enticing any person less than 16 years of age to engage in sadomasochistic abuse, sexual bestiality, prostitution, or any other act involving sexual activity."   The Court instructed the jury in accordance with this statutory language.   See Court's Final Jury Instructions (Doc. 167; Jury Instructions), at 11-13.

Id.   In Defendant's view, to be found guilty of the charged offense, the government was required to prove that Defendant held the specific belief that he was in communication with a twelve-year-old, as opposed to a thirteen, fourteen, or fifteen-year-old.   Id.   Notably, Defendant identifies no authority supporting his contention that the Court's instruction was in any way erroneous or that the government improperly sought a conviction based on the age range specified in Florida Statutes section 800.04(4)(a).   See generally Motion.   In affirming a conviction for violating § 2422(b) under similar circumstances, the Fifth Circuit rejected such an argument explaining, "[t]he difference between the age thresholds in the two statutes merely narrows the applicability of the federal statute to the age range proscribed by state law."   See United States v. Shahzad, 693 F. App'x 382, 383 (5th Cir. 2017) (per curiam).   Here, in the Indictment the government charged Defendant with attempted online enticement of an individual he believed to be twelve years of age or older but less than sixteen years of age to engage in illegal sexual activity.   See Indictment at 1.   And the Court instructed the jury consistent with that very same age range as set forth in the Indictment and in Florida Statutes section 800.04(4)(a).   The government's burden was to present proof of that age range as required for the charged offense, but did not have to prove that Defendant believed the persona to be exactly twelve years old.   As such, this contention presents no basis for granting a new trial.

Defendant also argues that the Court erred in allowing the government to advocate that "the 12 year old persona assumed by the [undercover agent], and repeatedly adopted during the 2 hour interrogation of Mr. Lama, was irrelevant, and the jury could speculate the [undercover] persona was as old as 13, 14 or 15."  Motion ¶ 1.  However, to the extent Defendant asserts the government argued that the persona's age was "irrelevant," the Court finds no support for this contention.

Defendant additionally contends that the government "secured improper speculative testimony" from defense witness Dr. Randell Alexander concerning his expert opinion as to the age of the individual depicted in one of the photos sent to Defendant during the undercover investigation.  See Motion ¶ 2.  In this regard, Defendant asserts that the questions posed to Dr. Alexander during cross-examination rendered portions of his testimony speculative, and that such speculation allowed the government to disregard both the age of the individual depicted in the photo and the age of the persona used in the undercover investigation to "expand their proof to permit the jury to speculate she could have appeared to be the age of 14 – contrary to Dr. Alexander's scientific testimony that, to a reasonable degree of medical certainty, she was at least 16 years old."[3]  Id.  However, Defendant's argument overstates the specificity of

---

[3]    Defendant contends that portions of Dr. Alexander's testimony were speculative because the government asked him "in essence, [if] he was lied to, and told the adult

Dr. Alexander's testimony.   Although Dr. Alexander did testify, in part, that "to a reasonable degree of medical certainty, [the individual in the photo] was at least 16 years old," he repeatedly qualified his opinion.   Indeed, on direct examination, Dr. Alexander testified that the individual in the photograph "looks like someone who's probably 16 to 18, I think. I think it becomes less likely if you start saying could she be 20? Could she be 14? Less likely."   See Excerpt of Jury Trial (Testimony of Dr. Randell Alexander) (Doc. 173), at 33:6-9.   Similarly, he testified on cross-examination that "if I had to pick the center of what I think the best estimate, I'd still go with about the 16 to 18," id. at 41:11-13, and explained that while he could "live with" an age range of "14 to 18, maybe 20," he thought "that the 14 is kind of like the outside edge," and was "really more comfortable in the 16 to 18 [range]. . . ."   Id. at 43:9-13.   Dr. Alexander also explained that his age estimation was "a spectrum, and that at some point you start getting out of the edges of the spectrum."   Id. at 43:17-18.   Additionally, on re-direct examination Dr. Alexander testified that "independent of someone telling me what the exact age is, I'm still thinking it's 16 to 18, most likely somewhere in that range. Could be a little less, could be a little more, but more likely in the middle."   Id. at 46:6-9.   Finally, on re-cross examination, Dr. Alexander testified that he could "live with" an age range from

---

in the photo (Gov. Ex. 3) was truthfully 14 years old, he would accept that representation."   Motion ¶ 2 (emphasis omitted).   No such question was asked.

fourteen to eighteen, and maybe twenty years old, "particularly if you -- if you tell me this is a 14-year-old, then I can accept that."   See id. at 47:3-8.   In sum, Dr. Alexander's testimony left ample room for the jury to interpret his opinion to include the possibility that the individual depicted in the photo was under sixteen years old.   Moreover, even assuming that Dr. Alexander's testimony could be characterized as speculative, the Court instructed the jury that each member must decide whether to rely upon Dr. Alexander's opinion—in other words, the jury was free to disregard his opinion entirely, if the jury determined it was appropriate to do so.   See Court's Final Jury Instructions (Doc. 167; Jury Instructions), at 8 (instructing the jury that "[a]s with any other witness, you must decide for yourself whether to rely on that opinion").   And critically, as the government correctly notes in the Response, it was ultimately the Defendant's belief regarding the age of the persona—not the belief of other individuals—that was determinative in this case.[4]   See Response at 7.   The jury was instructed consistent with that requirement.   For these reasons, the Court will not grant a new trial based on Dr. Alexander's testimony.

---

[4]     Defendant concedes as much in the Motion, arguing "the belief of others was entirely irrelevant and highly prejudicial – especially in a case where the key issue was what Mr. Lama believed."   See Motion ¶ 4 (emphasis in original).

### ii.  Testimony of Special Agent Grant

Next, Defendant argues that the introduction of portions of Special Agent Grant's testimony was "highly prejudicial" and warrants a new trial.  <u>See</u> Motion ¶ 3.  Perplexingly, in support of this argument Defendant asserts that "[t]he government was permitted to allow Agent Grant to testify that he had used the photograph of the 18 year old (Gov. Ex. 3) in prior investigations, and other defendants had "believed" she was 12."  Motion ¶ 3.  However, Defendant fails to cite to any portion of the record in which the government elicited such testimony, and the Court found no such exchange in the record.  Rather, it appears defense counsel elicited the complained-of testimony during cross-examination of Special Agent Grant.  <u>See</u> Excerpt From Jury Trial Proceedings (Testimony of Special Agent Dustin Grant) (Doc. 171), at 109:2-7.  Specifically, when asked by defense counsel "[a]nd so you're here under oath and you're telling us that there's no way that she could be 18 in this picture," Special Agent Grant testified "[w]ell, I know that she's 18, so it's not an accurate question. I know actually how old she is. I know she could pass -- and I've had other guys that I've chatted with -- as young as 12 years old."  <u>Id.</u> at 108:23-25–109:1-3.  Notably, Defendant did not object to Special Agent Grant's testimony during this exchange.  However, even if Defendant had objected

during trial, Special Agent Grant's answer was relevant and probative to the issues in the trial, and not unfairly prejudicial.[5]

Defendant also contends that Special Agent Grant's testimony concerning Defendant's waiver of his constitutional rights was prejudicial.   See Motion ¶¶ 5-10.   In making this argument, Defendant reasserts his objection to the Court's ruling during trial permitting the government to ask Special Agent Grant whether it is unusual for a person being interviewed "to waive their constitutional rights."   See Testimony of Special Agent Grant at 266, 269. Defendant contends that Special Agent Grant's answer in the negative was both prejudicial and irrelevant.   Id.   However, for the reasons articulated by the Court in ruling on Defendant's objection, Defendant's request for a new trial on this basis is due to be denied.   Indeed, as the government correctly notes, this

---

[5]      To the extent Defendant asserts that the government improperly argued that the premise of the undercover investigation was believable, see Motion ¶ 3, this argument is likewise without merit.   During the trial, Defendant repeatedly argued that the government's undercover "scam" was not believable, see, e.g., Transcript of Jury Trial (Volume I) (Doc. 178; Trial Tr. Vol. I), at 33:12-15 (arguing during opening "the real issue is, was Agent Grant a believable pregnant 12-year-old?"); see also Transcript of Jury Trial (Volume III) (Doc. 180; Trial Tr. Vol. III) at 104:14-24 (arguing during closing "for that scam to work, it has to be believable . . . [b]ut as I hope I showed in opening and as I will show to you here today, [the FBI agent] did not do that").   Thus, the government's comments during rebuttal regarding the believability of the undercover investigation were properly offered in response to Defendant's theory that the undercover investigation was not believable.   See United States v. Reeves, 742 F.3d 487, 505 (11th Cir. 2014) (quoting United States v. Sarmiento, 744 F.2d 755, 765 (11th Cir. 1984) (recognizing that "the prosecutor, as an advocate, is entitled to make a fair response to the arguments of defense counsel," and "[t]hus, issues raised by a defendant in closing argument are 'fair game for the prosecution on rebuttal.'").

testimony was relevant and justified in response to Defendant's strategy, in which he sought to suggest that a guilty individual would not waive his constitutional right to remain silent, Defendant waived his right, therefore Defendant is innocent.   <u>See</u> Response at 10. For these reasons, the Court declines to find that the testimony of Special Agent Grant warrants the granting of a new trial.

### iii.  Interstate-Commerce Element

In further support of his request for a new trial, Defendant asserts that the government failed to prove the interstate-commerce element of the charged offense and that the Court gave an improper instruction regarding this element. <u>See</u> Motion ¶¶ 11-20.  Specifically, Defendant challenges—for the first time— the Court's use of language from the Eleventh Circuit Criminal Pattern Jury Instructions, Instruction No. O92.2 (2016), in its instructions to the jury concerning the interstate-commerce element, contending that the Eleventh Circuit precedent cited in the comments of this pattern instruction "does not relieve the government of its obligation to prove the use of interstate facilities." <u>Id.</u> ¶¶ 14-15.  Remarkably, in the Motion, defense counsel represents that he "objected to the jury instructions on [the interstate] element."  Motion ¶ 11, n.3.  However, defense counsel does not cite to any portion of the record suggesting he did in fact object to this element.  And the transcript of the charge conference records no such objection.  Trial Tr. Vol. III at 11-30.  To

the contrary, in Defendant's own proposed jury instructions, with regard to the interstate element of the offense instruction Defendant requested that the Court instruct the jury that the second element of the offense is: "[t]hat the defendant used facilities of interstate commerce, that is, a cellular telephone and a computer via the internet. . . ." <u>See</u> Defendant Sanjay Lama's Third Amended Proposed Jury Instructions and Incorporated Memorandum of Law (Doc. 151), at 7.[6]   As such, the Court finds no support in the record for the belated contention that Defendant objected to the Court's instruction on the interstate commerce element.

In the Motion, Defendant argues that the government failed to prove that the cellular telephone used in the commission of the offense was in fact an instrumentality of interstate commerce. <u>Id.</u> ¶ 15.   However, Defendant's arguments concerning this element are entirely without merit.   In accordance with Eleventh Circuit precedent, the Court—tracking the language of the Eleventh Circuit pattern instruction—instructed the jury that "[t]he Internet is a facility of interstate commerce, and a cellular telephone is also a facility of interstate commerce." <u>Compare</u> Court's Final Jury Instructions (Doc. 167), at 13, <u>with</u> <u>United States v. Hornady</u>, 392 F.3d 1306, 1311 (11th Cir. 2004) ("The internet is an instrumentality of interstate commerce."), <u>and</u> <u>United States v.</u>

---

[6]     Defendant actually submitted several versions of his proposed jury instructions and every one of them contained this same language.   <u>See</u> Docs. 73, 117, and 151.

_Evans_, 476 F.3d 1176, 1180-81 (11th Cir. 2007) ("Telephones and cellular telephones are instrumentalities of interstate commerce. [The defendant's] use of these instrumentalities of interstate commerce alone, even without evidence that the calls he made were routed through an interstate system, is sufficient to satisfy § 2422(b)'s interstate-commerce element.") (internal citations omitted).[7]  And contrary to Defendant's argument that the government failed to prove this element, the government introduced ample evidence from which the jury could determine that Defendant used his cellular telephone and/or the internet in the commission of the charged offense.  For example, Defendant admitted in his post-arrest interview that he used the "Whisper" cellular telephone application to communicate and used the internet in doing so.  See Interview of Sanjay Lama (Doc. 164-7), at 14:6-7, 20:8-9, 28:7-9, 32:9-10, 34:13-15, 45:17–46:21, 85:21-23, 112:22-25, 113:1-4, and 117:3-4.  Additionally, the government introduced into evidence the cellular telephone that Defendant admitted to using.  See id. at 33:16-18, 45:17–46:21; see also Third Amended Exhibit List, Ex. No. 19 (Doc. 164-12).  Further, the jury received in evidence a photograph of this cellular telephone depicting the online communications

---

[7]     As the Eleventh Circuit plainly instructs in Hornady and Evans, in the context of 18 U.S.C. § 2422(b), the internet is categorically an instrumentality of interstate commerce, as are telephones and cellular telephones.  See Hornady, 392 F.3d at 1311; see also Evans, 476 F.3d at 1180-81.   Thus, Defendant's use of these instrumentalities alone, even absent evidence that Defendant's communications were routed through an interstate system, "is sufficient to establish § 2422(b)'s interstate-commerce element." See Evans, 476 F.3d at 1180-81.

through the Whisper application.   See Third Amended Exhibit List, Ex. No. 8 (Doc. 164-8).   Moreover, during trial Special Agent Moxley testified that immediately prior to Defendant's arrest he witnessed Defendant manipulating or typing on his cellular telephone, that such phone was recovered and placed into evidence, and that upon review of the phone it contained a portion of the Whisper communications.   See Excerpt of Jury Trial Proceedings (Doc. 172) at 20:11–22:9, 30:16-20, and 47:2-15.   On this record, the Court concludes that the instruction as to the interstate-commerce element was proper in light of Eleventh Circuit precedent, and that the jury had sufficient evidence to conclude that Defendant used a facility of interstate commerce in the commission of the offense.   Thus, the Court declines to grant Defendant's Motion on these grounds.

### B. Judgment of Acquittal

In support of his request that the Court set aside the jury's verdict and enter a post-verdict judgment of acquittal, Defendant "adopts and incorporates by reference the grounds he presented to the Court during the trial of this case, as well as the grounds recited above in support of a new trial."   Motion ¶ 21. Upon consideration, to the extent Defendant's request is based on the arguments presented during Defendant's trial, the Court concludes that Defendant's challenge to the sufficiency of the evidence is due to be rejected for the reasons the Court articulated in denying Defendant's oral motions for

judgment of acquittal during trial.  <u>See</u> Trial Tr. Vol. III at 5-11.[8]  Indeed, "viewing all the evidence in the light most favorable to the [g]overnment and drawing all reasonable inferences and credibility choices in favor of the jury's verdict," the Court finds that "a reasonable trier of fact could find that the evidence established guilt beyond a reasonable doubt."  <u>Grigsby</u>, 111 F.3d at 833.  Moreover, for the reasons set forth above, the Court concludes that Defendant's arguments advanced in favor of his request for a new trial do not warrant entry of a judgment of acquittal.

Defendant also asserts that a question presented to the Court during the jury's deliberations demonstrates that the jury "mis-comprehended [sic] the law, and failed to implement the required burden of proof."[9]  <u>See</u> Motion ¶ 23. However, Defendant does not explain how the jury's question in any way

---

[8]    To the extent Defendant argues that "[n]o 'substantial step' – toward the commission of the crime of lewd and lascivious battery took place," he misunderstands the government's burden.  Having charged Defendant with attempted online inducement of a minor to engage in unlawful sexual activity, the government was not required to present proof of a substantial step towards engaging in the unlawful sexual activity.  Instead, the government was required to present proof beyond a reasonable doubt that Defendant took a substantial step toward "inducing" the minor.  The Eleventh Circuit has instructed "'the government must prove that the defendant took a substantial step towards causing assent, not towards causing actual sexual contact.'" <u>United States v. Cramer</u>, 789 F. App'x 153, 155 (11th Cir. 2019) (quoting <u>United States v. Van Buren Lee</u>, 603 F.3d 904, 914 (11th Cir. 2010)).  This is so because the statute criminalizes the attempted persuasion rather than the sexual activity.  <u>See</u> <u>Van Buren Lee</u>, 603 F.3d at 914.
[9]    During deliberations, the jury sent the Court a note asking the following question: "Concerning Element 3, does 'believe' mean 100 percent or maybe?"  <u>See</u> Transcript of Jury Trial (Volume IV) (Doc. 181), at 4:11-12.

suggests that the jury "mis-comprehended" the law or the Court's instructions on the law.  See generally Motion.   Nor does Defendant point to any authority supporting his contention that this jury question warrants entry of a judgment of acquittal.   See generally id.   Further, in answering the jury's question, the Court first discussed the question with the parties and—without objection and upon Defense counsel's suggestion—again instructed the jury that the government bears the burden of proving each and every element of the offense beyond a reasonable doubt.[10]   Therefore, the Court finds no basis for the entry of a judgment of acquittal.

## III.   Conclusion

Upon consideration of the relevant authority, Defendant's arguments, and the record in this case, the Court concludes that Defendant has failed to demonstrate that the interest of justice warrants the Court setting aside the jury's verdict and granting a new trial, Green, 275 F. App'x at 899, and has likewise failed to establish that no reasonable trier of fact could have found that the evidence adduced at trial established Defendant's guilt beyond a reasonable doubt, Grigsby, 111 F.3d at 833.   Thus, Defendant is not entitled to a new trial or entry of judgment of acquittal.

---

[10]   Notably, courts presume that jurors follow the instructions given by the trial court.   See United States v. Almanzar, 634 F.3d 1214, 1222 (11th Cir. 2011) (citing United States v. Ramirez, 426 F.3d 1344, 1352 (11th Cir. 2005)).

Accordingly, it is hereby

**ORDERED:**

Defendant Lama's (1) Motion for New Trial and (2) Post-Verdict Judgment of Acquittal (Doc. 170) is **DENIED**.

**DONE AND ORDERED** in Jacksonville, Florida this 19th day of July, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

lc27
Copies to:
Counsel of Record